**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| LOUISIANA-PACIFIC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| COMPOSATRON MFG., INC. and | ) | Judge _____ |
| COMPOSATRON COMPOSITE TECHNOLOGY | ) | |
| a/k/a COMPOSATRON CORP., | ) | Magistrate-Judge _____ |
| | ) | |
| Defendants. | ) | (Qualified) Jury Demand |

## VERIFIED COMPLAINT

This is an action brought by Louisiana-Pacific Corporation ("LP") against the Defendants (collectively, "Composatron") obtain specific performance and injunctive relief as a result of Composatron's willful and malicious efforts to misappropriate LP's trademarks and its goodwill and to harm and disrupt LP's business. Composatron's unlawful conduct includes federal trademark infringement, interference with prospective business relations, unfair competition, breach of contract and promissory estoppel.

## NATURE OF ACTION

1. LP is engaged in the business of manufacturing and selling building materials. LP has developed through years of effort a substantial market in the United States for its LP® WeatherBest® Premium Deck System, a premium packaged composite wood decking system. This Complaint arises out of Composatron's unlawful breach of its legally binding commitment to provide to LP, on an exclusive basis in the United States, the railing component of the WeatherBest® system sold under LP's brand name WeatherBest® Premium Crystal White™ Railing. Composatron timed its breach so as to cripple LP's efforts to bring the WeatherBest®

Premium Deck System to market during the industry's critical October 1 to November 30 buying season known as the "Winter Buy." Composatron did so as part of a scheme to illegally take advantage of LP's channels of distribution, business relationships, trademarks, reputation and goodwill to directly obtain orders for the Crystal White™ Railing products from LP's customers. Composatron knew at the time of its breach that LP would be unable to obtain or manufacture another compatible, premium railing system in time for the Winter Buy; it knew that LP would be forced to cease marketing the packaged WeatherBest® Premium Deck System; it knew that LP would be unable to fulfill existing orders of the WeatherBest® system; and it knew its action threatened a distributor relationship that LP had established with a leading national distributor of building products immediately prior to the Winter Buy to market and sell the WeatherBest® system. Composatron's illegal actions have and are continuing to cause immediate and irreparable damage to LP's market position, its business reputation and goodwill. LP also stands to lose the significant sales and profits it would make but for Defendants' wrongful acts. LP's remedy at law is not adequate to compensate it for injuries threatened and therefore LP seeks immediate injunctive relief.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff LP is a Delaware corporation having its principal place of business in Nashville, Tennessee.

3.      The Defendants, Composatron Mfg., Inc. and Composatron Composite Technology a/k/a Composatron Corp. (collectively "Composatron"), are corporations organized and existing under the laws of Canada and which have their principal place of business in Toronto, Province of Ontario, Canada.   Both Composatron entities are named because

2

Composatron has used the stationery of both entities in the communications with LP regarding the requirements contracts and sales of railing products to LP over the past several years.

4.      This is an action for federal trademark infringement, unfair competition, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, as well as pendent state law claims for specific performance or in the alternative for damages.  Plaintiff LP seeks a temporary restraining order and preliminary and permanent injunctive relief.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.  Venue is proper in this District pursuant to 28 U.S.C. § 1391.  The amount in controversy as to LP's claims exceeds $75,000 U.S., exclusive of interest and costs.

5.      This Court has subject matter jurisdiction, personal jurisdiction and venue over Composatron and over the claims asserted herein.

## FACTUAL ALLEGATIONS

6.      LP is in the business of manufacturing and selling building materials.  One of the product lines marketed by LP is the LP® WeatherBest® Premium Deck System.  The LP® WeatherBest® Premium Deck System is a high-end system made from a composite of virgin plastics and wood, which looks like real wood but does not require the upkeep required with a real wood deck.  LP sells its LP® WeatherBest® Premium Deck System to distributors who resell its deck system to dealers, contractors, retailers and others.  LP's largest customer for the WeatherBest® Premium Deck System is Boston Cedar & Millwork ("Boston Cedar"), a distributor based in Massachusetts and focused on the Northeast United States.

7.       LP has developed a substantial market for the WeatherBest® Premium Deck System package, which incorporates the Crystal White™ railing component manufactured for LP's exclusive use in the United States by Composatron.  LP has expended a great deal of time,

3

effort and money in the promotion and advertisement of goods sold under the trademarks WEATHERBEST® and Crystal White™ (collectively, the "Marks"). The products sold under the Marks are of high quality. As a result, the Marks have become famous among the trade as denoting LP as the source of those high-quality goods. LP provided a warranty to end users of the WeatherBest® system including Crystal White™ Railing. LP has a website where it advertises its products and services and also displays information about the company and its products and services. This website is accessible through the domain http://www.lpcorp.com. The WeatherBest® and Crystal White™ trademarks are used prominently on this site.

8.     As the result of the widespread and continuous use and promotion of the LP Marks, the Marks have achieved fame and distinctiveness and are known and recognized as source-identifiers for the goods originating with LP and serve to distinguish those goods from those of others. Those Marks represent and embody LP's enviable reputation and valuable goodwill among members of the trade and the purchasing public.

9.     Composatron manufactures composite products, such as railing systems, decking, fences, and accessories. Composatron is a Canadian manufacturer of decking and railing products and distributes its products in both Canada and the United States.

10.     Since 2002, Composatron has manufactured for LP's exclusive sale in the United States "Colonial" style decorative railing products which LP has sold under the brand name "Crystal White™." Crystal White™ Railing products are incorporated in the LP® WeatherBest® Premium Deck System and have been marketed by LP as a complete package to LP's customers.

4

11.     LP has entered into a series of requirements contracts with Composatron for the exclusive distribution in the United States of "Colonial" style decorative railing products manufactured by Composatron.

12.     Since 2002, LP with considerable investment and effort has built the United States market for the LP® WeatherBest® Premium Deck System, which includes the Crystal White™ Railing manufactured by Composatron for LP's exclusive use in the United States. LP's incorporation of Crystal White™ Railing into the LP® WeatherBest® Premium Deck System provides high quality and convenience to its customers as well as to end users. LP has been successful in its sales and marketing efforts, having grown the market for the LP® WeatherBest® Premium Deck System from approximately $1.18 million in 2002 to approximately $9.1 million in 2004. LP was on track for even greater sales in 2005, having sold approximately $11.3 million of the LP® WeatherBest® Premium Deck System through November 1, 2005.

13.     Composatron knew that LP had heavily invested in and successfully developed the United States market for the LP® WeatherBest® Premium Deck System including Crystal White™ Railing. Prior to October 2005, to LP's knowledge, Composatron adhered to its exclusivity agreement with LP for the sale of "Colonial" style railing products.

14.     Beginning in 2002, LP has on a confidential basis provided to Composatron information regarding LP's customer orders. LP asked that Composatron make direct shipments to LP's customers. LP's customer information has been provided to Composatron under circumstances requiring that the information be maintained as proprietary and that it not be used for competitive or commercial purposes. Under no circumstances was Composatron permitted to

5

use the customer information provided by LP in order for Composatron to make direct sales to LP's customers.

15.     Composatron does not have any right to approve LP's customers, nor does it have any right to refuse to fulfill LP's requirements needs based upon the identity of a particular customer.  During their several-year relationship prior to October 2005, Composatron never expressed dissatisfaction with the distribution channels through which LP sold the LP® WeatherBest® Premium Deck System.  In fact, Composatron repeatedly inquired of LP how it planned to add new distributors to its United States market.

16.     In the decking and railing industry, the most significant sales period is called the "Winter Buy" or "Winter Dating" period.  This annual intensive sales period is when manufacturers offer discounted prices to encourage customers to build inventory during the winter months, when deck construction is typically at its lowest.  The Winter Buy period for LP begins approximately October 1 and runs through November 30.  Orders placed with LP prior to November 30 qualify for certain discounts, delayed payments or other incentives.  During the Winter Buy period, LP's sales representatives actively market the LP® WeatherBest® Premium Deck System to distributors and others.  In turn, the distributors of LP's products are actively marketing the LP® WeatherBest® Premium Deck System during the Winter Buy period to dealers, retailers and others.  LP's distributor customers then place orders with LP.  Those orders must be placed by November 30.  Although the Winter Buy period only lasts two months, it accounts for approximately 40% of LP's annual sales of decking and railing products.

17.     For the past several years shortly before LP's Winter Buy program would begin, Composatron representatives annually visited LP's offices to discuss LP's plans for the LP® WeatherBest® Premium Deck System and LP's next year of purchases and pricing of Crystal

6

White™ Railing. LP and Composatron agreed on an annual basis that Composatron would supply LP's requirements of Crystal White™ generally over an October 1-September 30 term.

18.     On September 1, 2005, in Nashville, Tennessee (the "September 2005 Meeting"), the parties reviewed LP's 2003 and 2004 sales of the LP® WeatherBest® Premium Deck System including the Crystal White™ Railing, and they discussed year-to-date 2005 sales, requirements needs and 2006 pricing. Also discussed at that meeting was the fact that LP was in negotiations with a leading national building products distributor which LP hoped would expand sales considerably; however, LP was not at liberty at that time to disclose the name of the distributor since both it and LP are public companies. Composatron voiced no objection to LP entering into a relationship with a national building products distributor which was a new customer relationship for LP.

19.     As they had in prior years, LP and Composatron again reached agreement on all material and essential terms of their requirements contract for LP's needs for Crystal White™ railing. This agreement constituted a legally binding contract.

20.     Following the September 2005 Meeting, in good faith reliance on its agreement with and the representations of Composatron as well as the parties' prior course of dealing, LP expended significant resources to promote WeatherBest® Premium Crystal White™ Railing. LP rolled out its Winter Buy program which would take place up until November 30, 2005. LP printed stocks of promotional materials for its distributors to deliver to dealers and then to end users promoting the LP® WeatherBest® Premier Deck System, including Crystal White™ Railing manufactured for LP's sale in the United States by Composatron.

21.     Following the September 2005 Meeting, LP solicited orders for the LP® WeatherBest® Premium Deck System including the Crystal White™ Railing. LP's

WeatherBest® distributors also have solicited and continue to solicit orders from their dealers and other customers during the Winter Buy period.

22.     On or about September 26, 2005, a public announcement was made regarding LP's entering into a distribution relationship with BlueLinx, a major national building products distributor.   BlueLinx entered an agreement with LP specifically to expand its purchasing relationship to include the LP WeatherBest® Premium Deck System including Crystal White™ Railing.   A true and correct copy of the BlueLinx press release announcing this agreement is attached as Exhibit A.   LP promptly called Composatron regarding the public announcement. Composatron voiced no objection to LP's selling the LP® WeatherBest® Premium Deck System including Crystal White™ Railing to BlueLinx.   Subsequently, LP received sizeable orders from BlueLinx for the WeatherBest® system, of which approximately eleven truckloads of Crystal White™ Railing products have been shipped by Composatron.   Composatron has also filled orders for other LP customers from and after October 1, 2005.   On invoices generated by Composatron, the Crystal White™ Railing products are referred to by Composatron as "WEATHERBEST" products.   An example of one such Composatron invoice to LP in October 2005 is attached hereto as Exhibit B.

23.     The requirements contract between LP and Composatron has been partially performed.   Further, the requirements contract has been treated by the parties as an existing agreement.

24.     Composatron was and is fully aware LP's Winter Buy program is key to the success of marketing the WeatherBest® Premium Deck System including Crystal White™ Railing.  LP's Winter Buy program takes place over an approximately two month period ending November 30.  Composatron was and is fully aware that LP was relying, as it always had done,

8

on Composatron's contract, promises and representations to supply LP's requirements needs for Crystal White™ Railing products.

25.     On or about October 19, 2005, Composatron's President, John Scrymgeour, complained to LP's John Sooker via voicemail that Composatron did not approve of LP's new customer, BlueLinx, and that Composatron was not shipping any more product.  In a telephone conversation later that day, Mr. Scrymgeour told the LP representatives that he was concerned that BlueLinx would charge lower prices to its customers than Composatron preferred for the Crystal White™ Railing.   Mr. Scrymgeour informed the LP representatives that he was terminating the relationship with LP.   Mr. Scrymgeour told the LP representatives that Composatron would not fill the existing LP orders for Crystal White™ Railing and would not honor any future LP orders for Crystal White™ Railing.

26.     By letter dated October 24, 2005, Composatron purported to formally terminate Composatron's relationship with LP, citing "irreconcilable differences" as the reason for the termination.  A true and correct copy of Composatron's termination letter is attached hereto as Exhibit C.  Composatron's supposed justification was pretextual, as the price paid for the Crystal White™ Railing products had already been agreed to between the parties and their requirements contract did not permit Composatron the right to approve LP's customers or to unilaterally terminate the requirements contract without advance notice.   Composatron's purported termination violated the requirements contract between the parties.

27.     Composatron's alleged termination came during the height of LP's Winter Buy program.  As a result of Composatron's action, LP cannot fill orders already received for the LP® WeatherBest® Premium Deck System including Crystal White™ Railing.  For example, LP has only filled a fraction of BlueLinx's orders for the Crystal White™ railing.  LP cannot fill

9

more orders for the WeatherBest® Premium Deck System, and LP's entire Winter Buy program is disrupted. Composatron's action has inflicted severe harm to LP's relationships with its customers. Composatron knew or should have known that LP could not develop or find another supplier of high-quality railing products equivalent to Crystal White™ Railing to complete LP's Winter Buy buying season in such a short period of time.

28. Composatron knew its actions would require that LP's customers would have no choice but to purchase directly from Composatron in order to obtain Crystal White™ Railing. Composatron has attempted to take over the market that LP had developed. With LP no longer able to obtain Crystal White™ Railing and supply those products to LP's customers as a result of Composatron's illegal actions, Composatron may impose a higher price for the Crystal White™ railing products than it received from LP.

29. Composatron has learned the identity of most of LP's customers for Crystal White™ Railing through its access to the shipment information for LP's orders. That information was provided by LP under circumstances requiring confidential treatment. One of the distribution channels and customer relationships that LP had created through its significant sales and marketing efforts was the relationship with its largest customer for the WeatherBest® Premium Deck System including Crystal White™ Railing is Boston Cedar & Millwork ("Boston Cedar"). By 2005, Boston Cedar accounted for approximately 70% of LP's sales of Crystal White™ Railing manufactured by Composatron for LP for sale in the United States.

30. By terminating LP just prior to LP's largest sales period of the year, Composatron was able to leave Boston Cedar and other LP customers in such a position of vulnerability that LP could not prevent Composatron's improper disruption of that business relationship.

31.     From and after October 19, 2005, on information and belief, Composatron has informed LP's distributor customers that LP no longer can fill their orders for Crystal White™ Railing.  The reason LP cannot fill its customers' orders or support its distributors' sales efforts to dealers, retailers and others is because of Composatron's illegal termination of the requirements contract.  As a result of Composatron's illegal action, LP is unable to deliver upon orders for its WeatherBest® Premium Deck System.

32.     From and after October 19, 2005, Composatron has refused to accept any orders from LP for Crystal White™ Railing.  Despite this repudiation of its contract with LP, Composatron, through its new customer base which it has recruited from the LP customer ranks, continues to promote or permit the promotion of Crystal White™ Railing, which is the brand name owned and promoted by LP as part of the WeatherBest® Premium Deck System product line.

33.     On information and belief, on or about November 2, 2005, Composatron entered into an agreement with Boston Cedar whereby Composatron has agreed to supply to Boston Cedar the same "Colonial" profile decorative railing products which Composatron is required to sell to LP on an exclusive basis in the United States.  Up until October 19, 2005, those products were sold exclusively by LP to Boston Cedar as part of the WeatherBest® Premium Deck System.

34.     On information and belief, Boston Cedar is not the only customer of LP for Crystal White™ Railing contacted by Composatron.  On information and belief, Composatron has approached other LP customers to supply Crystal White™ Railing.

35.     Composatron's largest customer for the Crystal White™ Railing products line, Boston Cedar, as of the filing of this Action, continues to market the same product using LP's

11

Marks.  (See http://www.bostoncedar.com/railing.html).  As of the date of the filing of this Action, Boston Cedar is promoting the sale of "LP® WeatherBest® Crystal White Railing."  A true and correct copy of a portion of Boston Cedar's website is attached hereto as Exhibit D.  Although as a result of Composatron's illegal actions, Boston Cedar cannot at this time purchase Crystal White™ Railing from LP, Boston Cedar continues to sell that brand as well as continues to link to LP's website (see

http://www.lpcorp.com/lpweatherbestdeckingandrailing/lpweatherbestdeckingandrailing.aspx) for the Crystal White™ Railing products line.

36.     Composatron should be aware that Crystal White™ Railing continues to be marketed by Boston Cedar as well as others under LP's brand name.  Composatron's actions or inaction have created and continue to create confusion in the marketplace.  Composatron is unfairly and illegally trading on LP's WeatherBest® federally registered trademark and the Crystal White™ common law trademark.

37.     Composatron has disrupted the marketplace and caused customer confusion, interfered with customer relationships, and made direct sales to LP's distributors in violation of the exclusivity of the requirements contract between LP and Composatron.

## COUNT I
### (Federal Trademark Infringement, Federal and Common Law Unfair Competition, Federal and State Dilution)

38.     LP realleges and reincorporates the allegations contained in Paragraphs 1 through 37 as if fully set forth herein.

39.     LP is the owner of the trademark WEATHERBEST®, which is registered on the Principal Register of the United States Patent & Trademark Office, Reg. No. 2666947.  This registration is valid and subsisting, and constitutes prima facie evidence of the validity of the

1161657.1

mark and of L-P's exclusive right to control the use of the mark on and in connection with the goods recited in the registration certificate. LP also is the owner of the common law trademark CRYSTAL WHITE™, used in conjunction with the "Colonial" style decorative railing products manufactured for L-P's exclusive sale in the United States by Composatron.

40.     The acts of Composatron complained of herein constitute trademark infringement, direct and/or contributory, in violation of 15 U.S.C. §§ 1114-1118.

41.     The acts of Composatron complained of herein constitute a direct and/or contributory violation of 15 U.S.C. § 1125(a) (federal unfair competition). Further, Composatron's use or sponsorship of the "Colonial" style decorative railing products in the United States is likely to or will cause consumers to be deceived as to the origin and sponsorship of the goods offered by Composatron. Composatron is thus engaged in direct and/or contributory unfair competition in violation of common law.

42.     The acts of Composatron complained of herein constitute direct and/or contributory trademark dilution under 15 U.S.C. § 1125(c)(1) and (2). Further, Composatron's use or sponsorship of "Colonial" style decorative railing products in the United States is likely to dilute the quality and/or strength of the LP Marks in violation of the anti-dilution laws of the state of Tennessee, Tenn. Code Ann. § 47-25-512, as a direct and/or contributory violation.

43.     The acts of Composatron complained of herein constitute direct and/or contributory false advertising under 15 U.S.C. § 1125(a)(1)(B) (federal false advertising).

44.     LP is entitled to immediate, preliminary and permanent injunctive relief in order to halt Composatron's illegal activities. In addition, LP is entitled to damages under the federal trademark laws, the Tennessee anti-dilution laws, and common law.

## COUNT II
### (Interference with Prospective Business Relations)

45.     LP realleges and reincorporates the allegations contained in Paragraphs 1 through 44 as if fully set forth herein.

46.     Composatron persuaded and continues to persuade LP's distributor customers, including but not limited to LP's largest customer for the LP® WeatherBest® Premium Deck System, Boston Cedar, to cease business with LP for the Crystal White™ Railing, specifically with regard to the Winter Buy, which results in injury to LP and benefits Composatron at the expense of LP.   Composatron is aware of LP's contractual/sales relationship with these distributor customers because it has been informed under confidential circumstances by LP of the identities of and purchases by those customers of the LP® WeatherBest® Premium Deck System including Crystal White™ Railing since 2002.  In addition, Composatron is aware of LP's recently announced distribution agreement with BlueLinx.  Composatron has interfered and continues to interfere with LP's relationship with BlueLinx and other customers by refusing to make any sales to LP, in violation of the parties' requirement contract.

47.     Composatron has induced and continues to induce or attempt to induce LP's distributor customer(s) not to purchase railing products from LP.  Composatron has interfered and continues to interfere with LP's intentions of providing its distributor customers with the complete LP® WeatherBest® Premium Deck System including Crystal White™ Railing.

48.     Composatron has knowledge of L-P's relationship with these third parties.

49.     Composatron acted and continues to act improperly and without privilege.

50.     Composatron's actions are an unauthorized interference or interference without legal justification or excuse.

14

51.     Composatron acts and continues to act intentionally, without proper motive or with improper means, and with the intent to injure LP.

52.     As a direct and proximate result of Composatron's tortious interference, LP is entitled to injunctive relief.  In addition, LP has sustained actual damages in an amount to be proven, as well as punitive damages.

**COUNT III**
**(Breach of Contract and Breach of Implied**
**Covenant of Good Faith and Fair Dealing)**

53.     LP realleges and reincorporates the allegations contained in Paragraphs 1 through 52 as if fully set forth herein.

54.     LP and Composatron had an enforceable requirements contract with respect to LP's orders of Crystal White™ Railing.  The contract is governed by Tennessee law.  The contract is valid, enforceable, and binding upon the parties.

55.     Composatron has breached the requirements contract by, among other things:

    a.     Declaring that the contract has been terminated by Composatron;

    b.     Selling Crystal White™ Railing or offering those products for sale within the United States, and specifically to LP's customers whose identities were provided to Composatron under circumstances precluding Composatron from using the information in competition with LP;

    c.     Failing to abide by the terms of the requirements contracts with LP by, without exception, failing to fill orders.

56.     Composatron's breaches and failures of performance constitute a violation of the implied duty of good faith and fair dealing implicit in every contract, and the implied duty of

15

good faith and fair dealing required under the Tennessee Uniform Commercial Code, Tenn. Code Ann. § 47-1-203.

57.     The Crystal White™ Railing product line cannot be obtained by reasonable efforts to "cover" during the Winter Buy period or within a reasonable period thereafter. Because of Composatron's illegal actions, LP stands to lose approximately $6 million in gross sales that it would have received from the Winter Buy program of sales of Crystal White™ Railing.  In addition, Composatron's refusal to supply the essential railing component to the WeatherBest® Premium Rail System will lead to irreparable harm through the loss of distributor relationships.  In particular, Composatron's illegal actions are jeopardizing LP's new relationship with BlueLinx, which planned to sell the LP® WeatherBest® Premium Deck System including the Crystal White™ Railing.

58.     LP is entitled to injunctive relief, including but not limited to an order requiring specific performance of its requirements contract with Composatron pursuant to the Tennessee Uniform Commercial Code, pursuant to Tenn. Code Ann. § 47-2-716, among other provisions.

59.     In the event that the Court determines that the parties were not bound by an enforceable requirements contract but instead were parties to a contract terminable at will, then LP is entitled as a matter of law and pursuant to the covenant of good faith and fair dealing to a reasonable notice of termination which would permit LP an opportunity to obtain an adequate, reasonable source of the same type of high quality "Colonial" profile decorative railing products.

60.     Alternatively, as a result of Composatron's breaches and repudiation of the Agreement and breach of the implied covenant of good faith and fair dealing, LP has suffered damages in an amount to be shown at trial.

16

## COUNT IV
### (Promissory Estoppel — Alternative Count)

61.     L-P realleges and reincorporates the allegations contained in Paragraphs 1 through 60 as if fully set forth herein.

62.     Alternatively, Composatron promised that it would fill LP's requirements for an additional year, and that it would consummate the transaction with LP described in this Complaint.  Composatron was aware that the promise would induce action on the part of LP.  In fact, as a result of the promise, LP began taking orders from its customers for the Crystal White™ Railing.  Composatron knew of this justifiable reliance by LP because it received orders from LP and even began filling and shipping some of those orders.  Composatron thus breached its promise to supply the LP's requirements for Crystal White™ Railing.

63.     Composatron should reasonably have expected its promises to induce action or forbearance of a definite and substantial character on the part of LP.

64.     Composatron's promises did in fact induce such actions or forbearance on the part of LP, including without limitation its negotiation of the requirements agreement with LP.  LP acted reasonably and justifiably in relying on Composatron's promises.

65.     Injustice can only be avoided by enforcement of Composatron's promises.

66.     LP is entitled to injunctive relief requiring specific performance of Composatron's promises.  In the alternative, as a direct and proximate result of Composatron's breach of its promises, LP has suffered actual damages in an amount to be proven at trial, as well as punitive damages.

17

## COUNT V
## (Unfair or Deceptive Trade Practices)

67.     LP realleges and reincorporates the allegations contained in Paragraphs 1 through 66 as if fully set forth herein.

68.     Composatron willfully and knowingly engaged and continues to engage in unfair or deceptive acts or practices affecting the conduct of any trade or commerce in violation of Tenn. Code Ann. § 47-18-101 et seq.

69.     Composatron's permitting the use and marketing of LP's Crystal White™ brand after Composatron's purported termination of its relationship with LP, and its permitting the continued linkage of the Crystal White™ brand with LP® WeatherBest® Premium, is an unfair and deceptive trade practice prohibited by the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104.

70.     Composatron willfully and knowingly lured LP into marketing and developing a customer base for Crystal White™ Railing.  After LP had spent the time, effort, and capital to establish a strong customer base for Crystal White™, Composatron terminated the relationship with LP, and is now actively and intentionally pilfering LP's customers.  Composatron's actions constitute a violation of the Tennessee Consumer Protection Act.

71.     Composatron's conduct is causing, and is likely to cause, substantial injury to LP, and LP is entitled to injunctive relief and to recover its actual damages or an award of Composatron's profits, costs, and reasonable attorney's fees under Tenn. Code Ann. § 47-18-109.  Any such damages or profits awarded should be trebled pursuant to Tenn. Code Ann. § 47-18-109.

18

## COUNT VI
## (Claim for Rebate and for Setoff)

72.     LP realleges and reincorporates the allegations contained in Paragraphs 1 through 71 as if fully set forth herein.

73.     LP and Composatron agreed in 2004 that in the event that LP purchased at least 150 truckloads of Crystal White™ Railing products in 2005, Composatron would pay a rebate to LP in the principal amount of $100,000.00 U.S.  LP already purchased in excess of that amount in 2005.

74.     Composatron claimed in its supposed "termination" letter dated October 24, 2005, that it was entitled to payment by LP for products already supplied.  LP demands strict proof of any such claim by Composatron.  Further, LP asserts as a setoff all amounts owing to it by Composatron, including but not limited to the rebate referenced in the preceding paragraph, all warranty claims by customers and all outstanding volume incentive rebates.

## ALLEGATION OF IRREPARABLE INJURY AND DAMAGES

75.     LP realleges and reincorporates the allegations contained in Paragraphs 1 through 74 as if fully set forth herein.

76.     Composatron's actions as alleged above will cause LP to suffer irreparable damage to LP's business reputation and goodwill and the loss of sales and profits LP would receive but for Composatron's unlawful acts.  LP has gone to great expense to develop the LP® WeatherBest® Premium Deck System, the market for the System and LP's customer relationships.  The value and market position LP has achieved by doing so will be seriously eroded if Composatron is allowed to compete, using LP's proprietary information, LP's business reputation, LP's goodwill and Marks in violation of Composatron's agreement with and promises to LP.  LP cannot develop or find another supplier of high-quality railing products

19

equivalent to Crystal White™ Railing to complete LP's Winter Buy buying season in such a short period of time. It would be difficult to ascertain the amount of compensation that could afford LP adequate relief for such continuing acts. An award of damages in this case is an inadequate remedy because the loss of sales and market position is a continuing one and because Composatron's marketing scheme will infringe LP's trademark rights, resulting in confusion and deception of the public and irreparable harm to LP' existing and prospective business relationships and its business reputation. Accordingly, LP seeks a temporary restraining order and preliminary and permanent injunction pursuant to rule 65 of the Federal Rules of Civil Procedure and the powers granted this Court pursuant to 15 U.S.C. § 1116.

## QUALIFIED JURY DEMAND

LP submits to the Court that the parties are bound by an enforceable requirements contract, and that the parties in conjunction with that requirements contract have already agreed to a waiver of a trial by jury. In the unlikely event that Composatron alleges and/or establishes that the parties have not entered into such an agreement, then LP demands a trial by jury of all issues properly triable to a jury.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff LP respectfully prays for judgment against Composatron as follows:

(a)     A temporary restraining order and preliminary and permanent injunction against Defendants and their servants, agents, employees, successors and assigns, and all persons acting in concert with them:

(1)     enjoining them from marketing, selling, distributing, supplying or delivering Crystal White™ Railing under LP's Marks or in any fashion associated with LP's

Marks including WeatherBest®, from using any of LP's Marks including but not limited to the dissemination of any promotional, advertising, or instructional materials, from further diluting the value of the LP Marks, from holding themselves out to customers or to the public as being affiliated with or sponsored by LP, from using or disseminating any false or misleading statements as to the nature, quality, or characteristics of Composatron's goods and services, or from contributing to or participating, directly or indirectly, in any action by any Composatron customer; and

    (2) enjoining them from contacting or communicating with any LP customer to sell or offer to sell Crystal White™ Railing or any "Colonial" style decorative railing products.

    (3) enjoining Composatron from further breaches of the parties' agreement by requiring that Composatron supply LP and honor LP's exclusive rights to purchase Crystal White™ Railing for distribution in the United States, consistent with the requirements contract and/or Composatron's promises (promissory estoppel).

   (b) Award LP with specific performance of the requirements contract and/or Composatron's promises, or in the alternative award LP with specific performance for a reasonable period of time not to exceed the original length of the contract to permit LP to recoup its investment and/or find an alternative source of supply;

   (c) In the event that LP is not awarded specific performance and is not made whole for Composatron's actions, then to award LP damages to make it whole in an amount to be determined at trial;

   (d) Require an accounting of profits made by Composatron as a result of the acts complained of herein;

(e)     Award damages sustained by LP as a result of the acts complained of herein, to be trebled in accordance with 15 U.S.C. §1117 and with the Tennessee Consumer Protection Act.

(f)     Award LP its costs and expenses, including attorney's fees pursuant to 15 U.S.C. §1117 and pursuant to the Tennessee Consumer Protection Act, and to the fullest extent allowed under law.

(g)     Recognize LP's entitlement to the 2005 rebate, and recognize LP's right to setoff as sought in the Complaint;

(h)     Award LP punitive damages for Composatron's outrageous, intentional and egregious actions;

(i)     Award LP all prejudgment and post judgment interest, to the fullest extent allowable under law; and

(j)     Award LP such other and further relief, whether general, special, at law or in equity, to which Plaintiff LP may be entitled.

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, PLLC

By:_____
    Paul Davidson (Tenn. BPR No. 11789)
    Robb S. Harvey (Tenn. BPR No. 11519)
    Nashville City Center
    511 Union Street, Suite 2700
    Nashville, Tennessee  37219-8966
    Phone:  (615) 244-6380
    Facsimile:  (615)  244-6804

**THIS IS PLAINTIFF'S FIRST REQUEST FOR EXTRAORDINARY RELIEF.**

1161657.1